RECEIVED
AUG 31 2026
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **MAGDY ELYAMANY,**<br>Plaintiff, | )<br>) | Case No. 26-cv-3828 (MJD/JFD) |
| v.<br>EMPLOYMENT | )<br>) | COMPLAINT FOR |
| | ) | DISCRIMINATION |
| **REGENTS OF THE UNIVERSITY OF MINNESOTA,** | )<br>) | **JURY TRIAL DEMANDED** |
| Defendant. | )<br>) | |

Plaintiff Magdy Elyamany, appearing without counsel, states and alleges as follows:

## I. Parties

1. Plaintiff Magdy Elyamany resides at 6143 Lee Avenue North, Brooklyn Center, Hennepin County, Minnesota 55429. He was born in 1953 and is 73 years old. He was born in Egypt, is of Egyptian national origin, and is a naturalized citizen of the United States.

2. Defendant Regents of the University of Minnesota is the governing body of the University of Minnesota and is Plaintiff's employer. Defendants may be served through the Office of the General Counsel, University of Minnesota, 360 McNamara Alumni Center, 200 Oak Street S.E., Minneapolis, Minnesota 55455.

3. At all relevant times Defendant employed more than fifteen employees and was an employer within the meaning of Title VII of the Civil Rights Act of 1964.

## II. Jurisdiction and Venue

SCANNED
AUG 31 2026
U.S. DISTRICT COURT MPLS

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Hennepin County, Minnesota, and Defendant is located in this District.

6. Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission, Charge No. 444-2026-03354, on August 18, 2026. The Equal Employment Opportunity Commission issued a Notice of Right to Sue dated August 19, 2026, which Plaintiff received on August 19, 2026. A true and correct copy is attached as Exhibit A. This action commenced within ninety days of receipt of that notice.

## III. Factual Allegations

### A. Plaintiff's employment and qualifications

7. Plaintiff has been employed by the University of Minnesota, Facilities Management, for more than twenty-one years.

8. Plaintiff's current position is Lead Worker, East Bank Team 2, reporting to Team Manager Nate Ryan. The Lead Worker position carries leadership responsibilities over other custodial employees.

9. Plaintiff's qualifications include more than twenty-one years of service with the University of Minnesota; current Lead Worker leadership duties; a Higher Diploma in Accounting earned in 1975 and a Bachelor's Degree in Philosophy earned in 1979; prior professional and management experience; extensive Facilities Management operational experience; computer and Microsoft Word proficiency; preparation of written workplace reports; and substantial institutional knowledge.

10. Plaintiff met the posted minimum qualifications for the Custodial Supervisor position.

11. Plaintiff is currently paid approximately $28.00 per hour as a Lead Worker. The Custodial Supervisor position pays approximately $33.00 per hour, a difference of approximately $5.00 per hour, or approximately $10,400 per year based on full-time hours, exclusive of the effect on retirement contributions and other benefits.

12. Plaintiff has applied for the Custodial Supervisor position on four separate occasions during his employment, including the July 2026 process described below. He was not selected on any occasion. Plaintiff does not presently recall the exact dates of the three earlier applications; Defendant's personnel and applicant-tracking records will establish them.

**B. The July 2026 selection process**

13. On or about July 1, 2026, Michael Hofer, a Facilities Management manager, circulated a hiring communication regarding an open Custodial Supervisor position on the East Bank.

14. In that communication, Wengail Fetenssa appears in the CC field, identified as "FM WB2 - SupC Wengail Fetenssa," reflecting her then-current position as a West Bank Supervisor. Her name does not appear in the "To" line among the employees receiving the communication as prospective applicants.

15. The plaintiff applied for the position.

16. Applicants were required to complete an eleven-question written pre-interview questionnaire. The plaintiff completed it.

17. In Plaintiff's three prior applications for Supervisor positions, no written questionnaire was required. The July 2026 process was the first in which Plaintiff was required to complete one.

**C. The July 27, 2026 panel interview**

18. Plaintiff's panel interview took place on July 27, 2026 from approximately 8:00 p.m. to 9:00 p.m.

19. The University calendar invitation for the interview identifies Michael Hofer as organizer and lists Wengail Fetenssa, Michele Murray, and Plaintiff as attendees.

20. Wengail Fetenssa participated in evaluating Plaintiff and questioned him about how he prepared and completed written documents. Computer and documentation skills were relevant to the Supervisor position.

21. Michele Murray was the Team Manager for the team whose Supervisor position was being filled. The person selected would report to Ms. Murray.

22. During the interview, Plaintiff observed Ms. Fetenssa repeatedly consult Ms. Murray before writing evaluation notes or responses. The plaintiff does not know what was communicated during those consultations.

**D. The July 29, 2026 non-selection and recorded meeting**

23. On July 29, 2026, Plaintiff was informed that he had not been selected.

24. The plaintiff then met with Michael Hofer to discuss the decision. The plaintiff recorded the meeting. Minnesota is a one-party consent jurisdiction. Plaintiff has preserved the complete original audio recording and a transcript.

25. During that recorded meeting, Mr. Hofer said to Plaintiff: "Don't you go to your country? Ah."

26. Plaintiff understood the statement to refer to his country of origin. His immediate recorded response was: "Really. This is not your company."

27. In the same recorded meeting, Mr. Hofer described Plaintiff as "very smart" and "very capable."

28. In the same recorded meeting, Mr. Hofer also described Plaintiff as "very different and difficult," and stated that Plaintiff was "not the best person for the job."

29. In the same recorded meeting, Mr. Hofer stated: "I did not make that decision alone."

30. The plaintiff asked who had been selected and who was better qualified. He was not given any explanation identifying a specific qualification he lacked.

**E. Subsequent events**

31. On August 5, 2026, Plaintiff spoke briefly with Alice Roberts-Davis, Vice President of University Services, outside the Northrop Building. Plaintiff stated that his complaint was proceeding through the University's Equal Opportunity and Title IX process and that he was considering federal court.

32. Ms. Roberts-Davis asked Plaintiff not to go to federal court at that time and said she would speak with Mr. Hofer and provide feedback. Plaintiff requested that any feedback be sent by email. No feedback was provided.

33. On August 11, 2026, Plaintiff participated in an approximately two-hour recorded meeting with the University's Equal Opportunity and Title IX office and provided supporting documentation, including the complete original July 29 audio recording. That internal review remains pending.

34. On August 24, 2026, Michele Murray introduced Wengail Fetenssa to Team 1 as the new Team 1 Supervisor. Ms. Fetenssa transferred into that position from the West Bank and would report to Ms. Murray.

35. Later on August 24, 2026, an Administrative Supervisor identified to Plaintiff as Dabi stated that Ms. Fetenssa had moved from the West Bank and that Facilities Management can move supervisors.

36. Ms. Fetenssa thereby occupied the East Bank Supervisor position for which Plaintiff had been evaluated approximately four weeks earlier, in an evaluation in which she participated as a panel member.

**F. Pretext**

37. Defendant required applicants to submit applications, complete a written questionnaire, and participate in panel interviews, and then filled the position by lateral transfer of a person who had served as an evaluator in that competitive process.

38. Upon information and belief, Defendant's contemporaneous records will show when Ms. Fetenssa's transfer was first discussed, requested, recommended, and approved, and whether it was under consideration while the competitive process remained open.

39. The stated reason for Plaintiff's non-selection — that he was "not the best person for the job" — was unaccompanied by identification of any qualification Plaintiff lacked, and is inconsistent with the same decisionmaker's contemporaneous statements that Plaintiff was "very smart" and "very capable."

40. The characterization of Plaintiff as "very different" was made by the decisionmaker in the same conversation in which he referred to Plaintiff's country of origin.

**Count I — National Origin Discrimination**

*Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.*

41. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

42. Plaintiff is a member of a protected class based on his Egyptian national origin.

43. Plaintiff was qualified for the Custodial Supervisor position, applied for it, and was rejected. The position was thereafter filled by another person.

44. Plaintiff's national origin was a motivating factor in Defendant's decision not to promote him.

45. The reasons offered by Defendant for Plaintiff's non-selection are pretextual.

46. As a direct and proximate result, Plaintiff has suffered lost wages, lost benefits, lost career advancement, and emotional distress.

**Count II — Age Discrimination**

*Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.*

47. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

48. Plaintiff was 73 years old at the time of the decision and is within the class protected by the Act.

49. The plaintiff was qualified for the position, applied for it, and was rejected. Upon information and belief, the position was filled by an individual substantially younger than Plaintiff.

50. But for Plaintiff's age, he would not have been denied the promotion.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment that Defendant discriminated against Plaintiff on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964;

b. Enter judgment that Defendant discriminated against Plaintiff on the basis of age in violation of the Age Discrimination in Employment Act;

c. Award back pay, including the difference between Lead Worker and Custodial Supervisor compensation from July 29, 2026 forward, with lost benefits, retirement contributions, and prejudgment interest;

d. Order Plaintiff's promotion to the next available Custodial Supervisor position, or in the alternative award front pay;

e. Award compensatory damages for emotional distress and harm to professional reputation in an amount to be determined at trial, subject to applicable statutory limits;

f. Award costs and, if Plaintiff obtains counsel, reasonable attorney's fees under 42 U.S.C. § 2000e-5(k);

g. Grant such other relief as the Court deems just and proper.

**Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

Dated: 8/31/2026

**Magdy Elyamany**
Plaintiff, pro se
6143 Lee Avenue North
Brooklyn Center, Minnesota 55429
651-354-1009
elyam001@umn.edu

## EXHIBIT A

EEOC Notice of Right to Sue, dated August 19, 2026

Charge No. 444-2026-03354